1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   CRISTINA MARIE MARTINEZ,              No.  2:16-cv-1302 MCE AC
12                    Petitioner,
13        v.                               FINDINGS AND RECOMMENDATIONS
14   DEBORAH K. JOHNSON, Warden
15                    Respondent.
16

17        Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition which challenges

19   petitioner's 2011 conviction for special circumstances murder, and resulting sentence of life

20   without the possibility of parole.  ECF No. 1.  Respondent has answered, ECF No. 10, and

21   petitioner has filed a traverse, ECF No. 11.

22                              BACKGROUND

23   I.     Proceedings In the Trial Court

24        A. Preliminary Proceedings

25        Petitioner and her boyfriend, Robert Lee Hammons, were charged in Sacramento County

26   with the 2004 robbery and murder of Clayton Skinner.  Petitioner was charged with (1) murder,

27   with the special circumstance of killing while engaged in robbery and burglary; (2) first degree

28   robbery, with an allegation that the defendants acted in concert; and (3) first degree burglary.

                                    1

1    Hammons was also charged in Counts One through Three, and he faced an additional allegation

2    on the murder count of having personally used a deadly weapon.  Counts One through Three

3    arose from the incident in which Skinner was killed.  Hammons alone was charged with (4)

4    attempted robbery and (5) assault with a deadly weapon.  CT 222-225.[1]  Counts Four and Five

5    arose from a previous incident involving Skinner.

6        Petitioner's pre-trial motion to sever her trial from Hammons's was denied.  Supp. CT 19-

7    28; RT 4.[2]

8        B.  The Evidence Presented at Trial

9        The prosecution proceeded on a felony-murder theory, presenting evidence that petitioner

10    and Hammons went to Clayton Skinner's home to steal gemstones on July 2, 2004, and that in the

11    course of the robbery Hammons beat Skinner to death with a blunt instrument.  The jury heard

12    evidence of the following facts.

13        Petitioner and Hammons lived in the same household as Stacy L. and her two teenagers,

14    Teran (14 years old) and Taje (13 years old).  Petitioner and Hammons babysat for the boys while

15    their mother worked.

16        On June 26, 2004, Clayton Skinner called 911 to report that he had just been robbed and

17    beaten in his home by a man in his 20s and two teenagers.  He had been beaten on the back with a

18    steering wheel locking device known as a Club.  Teran testified[3] that he and his brother had gone

19    with Hammons to Skinner's house on that date to see about a car for sale.  Skinner had a tackle

20    box with gemstones in it, which Taje had unsuccessfully tried to take.  In the days that followed,

21    Hammons told Teran and Taje that they needed to go back and get the gemstones.  Hammons

22    convinced petitioner to go with them.  Hammons wanted petitioner to set everything up so that

23    they could get back into the house, by pretending to be interested in the car that Skinner was

24    offering for sale.

25

26    [1]  "CT" refers to the Clerk's Transcript on Appeal.  "Supp. CT" refers to the Supplemental
Clerk's Transcript on Appeal.

27    [2]  "RT" refers to the Reporter's Transcript on Appeal.

28    [3]  Teran had initially been charged as a co-defendant, and testified as part of a negotiated plea
agreement.

On July 2, 2004, petitioner drove Hammons and the boys back to Skinner's house in Stacy's van.  First Taje went to the front door, but Skinner recognized him and pulled a knife.  (At this point Skinner called 911 to report that one of his assailants had returned, but finally said that it looked like "they want to talk" and there was no emergency.)  Next petitioner went up to the door, and gained access by asking Skinner about the car for sale.  Hammons was listening to the interaction from the van, via cell phone.  When Hammons overheard Skinner make a crude remark to petitioner, he and the boys went into the house.  When Skinner alerted to the sound of someone else in the house, petitioner called out a warning that Skinner had a knife.  Hammons picked up the Club that was lying on a couch.  He hit Skinner on the head with it, and kept hitting until Skinner appeared to be unconscious.  Hammons instructed Taje to "keep him down" with the Club, so Taje hit Skinner in the back a few times until Teran told him to stop.  Petitioner grabbed some speaker wire and wrapped it around her hands to use as a choke.  She would approach Skinner when he roused and tried to get up, but never put the wire around his neck because Taje would kick or hit him to keep him from getting up.  The four left, taking the Club and Skinner's cell phone with them.

The next morning, Skinner's father went to his home and found blood all over the house and Skinner dead in the bathroom.  The tackle box containing Skinner's collection of semi-precious stones was missing.  An autopsy concluded that Skinner had been killed by blunt force trauma to the head.  A piece of plastic from the Club was found in a skull fracture.

Petitioner was interviewed by a detective in her home in February 2009, and falsely stated that a photograph of Hammons was a picture of a friend who had died.  Later, at the police station, she denied knowing Hammons even though they had three children together.  The jury was admonished to consider these statements as to petitioner only.  Hammons was interrogated in March and June of 2009, and made certain incriminating statements that were admitted as to Hammons only.

C.  Outcome

Both defendants were found guilty on all counts except Count Four, the attempted robbery charge against Hammons, as to which the jury could not reach a verdict and a mistrial was

1    declared.  The special circumstance and all special allegations were found true.  Supp. CT 32-34.

2         On September 22, 2011, petitioner was sentenced to life without the possibility of parole

3    on Count One (special circumstances murder).  Additional terms were imposed on Counts Two

4    and Three, and were stayed.  Supp. CT 83-85.

5    II.    Post-Conviction Proceedings

6         Petitioner timely appealed, and the California Court of Appeal affirmed the murder

7    conviction and life without parole sentence on January 12, 2015.  Lodged Doc. 4.[4]  The California

8    Supreme Court denied review on April 15, 2015.  Lodged Doc. 8.

9         Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on

10   January 20, 2016.  Lodged Doc. 7.  The petition was denied on April 20, 2016, without comment

11   or citation.  Lodged Doc. 6.[5]

12          STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

13        28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

14   1996 ("AEDPA"), provides in relevant part as follows:

15        (d) An application for a writ of habeas corpus on behalf of a person
     in custody pursuant to the judgment of a state court shall not be
16   granted with respect to any claim that was adjudicated on the merits
     in State court proceedings unless the adjudication of the claim –
17

18   _____

[4]  The counts other than murder were found to have been brought after expiration of the
19   applicable statutes of limitations, and were therefore vacated.  Lodged Doc. 4 at 37-38, 39.
     [5]  There are two problems with the lodged state court record.  First, Lodged Doc. 6, which is
20   identified by respondent as the California Supreme Court's order denying the petition for review,
     actually contains case information documenting denial of the state habeas petition.  Lodged Doc.
21   8, identified as the order denying the habeas petition, contains the information regarding the
     petition for review.  Second, the undersigned generally requires the lodged state court record to
22   include a copy of the California Supreme Court's order denying a habeas petition, and not just the
     docket report showing denial.  This is because the federal court's review under 28 U.S.C. §
23   2254(d) must proceed on the basis of the state court's actual decision.  Although the Appellate
     Courts Case Information system of the California Courts does generally indicate any procedural
24   citation that may accompany a denial, or indicate when a written opinion has issued, it is this
     court's obligation to review the decision itself.  Here, respondent has provided the docket report,
25   which indicates denial and does not indicate any comment or citation.  Lodged Doc. 6.  Because
     petitioner is represented by counsel, and independently represents that the denial was without
26   comment, ECF No. 1 at 4, the undersigned finds that the accuracy and completeness of the docket
     report is stipulated by the parties.  Accordingly, in this instance the court will not require
27   respondent to supplement the lodged state court record with a copy of the April 20, 2016 order.
28

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 582 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other

5

1   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182.

2   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

3   confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d

4   724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims

5   summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a

6   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

7   must determine what arguments or theories may have supported the state court's decision, and

8   subject those arguments or theories to § 2254(d) scrutiny. Richter, 582 U.S. at 102.

9                                                DISCUSSION

10   I.        Petitioner's Allegations and Pertinent State Court Record

11            Petitioner presents a single claim for relief, alleging as follows:

12                 Petitioner was denied effective assistance of counsel guaranteed by
                   the Sixth Amendment to the United States Constitution, for failure
13                 of appointed appellate counsel to challenge the petitioner's special
                   circumstance liability for lack of evidence that, as an aider and
14                 abettor to felony murder, she was a "major participant" in the murder.

15                 The Eighth Amendment to the Constitution forbids death penalty
                   eligibility for a defendant whose participation in criminal activities
16                 known to carry a grave risk of death was not sufficiently significant
                   to be considered "major" under controlling United States Supreme
17                 Court authority.

18                 As a matter of state statute, this standard is applicable to all
                   allegations of a felony-murder special circumstance, regardless of
19                 whether the state seeks the death penalty or life without parole.

20                 The evidence at trial did not support the conclusion that petitioner
                   knew that her own actions would involve a grave risk of death to the
21                 victim.

22                 The failure to raise this issue on appeal denied petitioner the right to
                   effective assistance of counsel guaranteed by the Sixth Amendment.
23

24   ECF No. 1 at 4.

25            Petitioner's Points and Authorities clarify the substance of her claim. Petitioner relies

26   heavily on the decision of the California Supreme Court in People v. Banks, 61 Cal.4th 788

27   (2015), which was issued shortly after her conviction became final. In Banks, as discussed more

28   fully below, the California Supreme Court held that a getaway driver who did not otherwise

                                                        6

1    participate in the underlying felony could not be liable for a mandatory LWOP sentence under

2    Cal. Penal Code § 190.2(d), because he could not be considered a "major participant" within the

3    meaning of the statute.  Petitioner contends that <u>Banks</u> demonstrates the invalidity of the special

4    circumstance finding in her case.  Petitioner also argues that <u>Banks</u> demonstrates that petitioner's

5    LWOP sentence violates the Eighth Amendment principles established by the U.S. Supreme

6    Court in <u>Enmund v. Florida</u>, 458 U.S. 782 (1982) and <u>Tison v. Arizona</u>, 481 U.S. 137 (1987).[6]

7    Accordingly, she contends that appellate counsel was ineffective in failing to mount a <u>Banks</u>-type

8    challenge under the Eighth Amendment and <u>Enmund</u>, <u>supra</u>.  ECF No. 1-1 at 15-16.

9          II.      The Clearly Established Federal Law

10         A criminal defendant enjoys the right to effective assistance of counsel on appeal.  <u>Evitts</u>

11   <u>v. Lucey</u>, 469 U.S. 387, 391 (1985).  Claims that this right has been violated are evaluated under

12   the framework of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Smith v. Robbins</u>, 528 U.S.

13   259, 285 (2000).  Under <u>Strickland</u>, the Sixth Amendment is violated when (1) counsel's

14   representation falls below an objective standard of reasonableness, and (2) the defendant is

15   prejudiced by the unreasonable performance.  <u>Strickland</u>, 466 U.S. at 692, 694.  To demonstrate

16   prejudice in the appellate context, petitioner must show a reasonable probability that she would

17   have prevailed on appeal absent counsel's alleged errors.  <u>Smith</u>, 528 U.S. at 285-286.

18         III.     Pertinent California Law

19               A.   Statutory Framework

20         In California, murder with special circumstances is punishable by a mandatory sentence of

21   life without parole ("LWOP") if the death penalty is not sought.  <u>See</u> Cal. Penal Code § 190.2(a).

22   One of the statutory special circumstances that renders a defendant death-eligible and/or subject

23   to mandatory LWOP is specific to the felony-murder context: § 190.2(a)(17) establishes a special

24   circumstance for murder "committed while the defendant was engaged in, or was an accomplice

25   _____

26   [6]  Petitioner has not directly presented a free-standing claim for relief on Eighth Amendment
     grounds, although her briefing sometimes reads as if she had.  <u>See</u> n. 9, <u>infra</u>.  Likewise,
27   petitioner extensively argues the insufficiency of the evidence, but has not presented a claim for
     relief under <u>Jackson v. Virginia</u>, 433 U.S. 307 (1974), nor argued unreasonable application of
28   <u>Jackson</u> by the California Supreme Court.

1   in, the commission of, attempted commission of, or the immediate flight after committing, or

2   attempting to commit" enumerated felonies including robbery and first-degree burglary.  Cal.

3   Penal Code § 190.2(a)(17)(A)&(G).

4        The application of this special circumstance to aiders and abettors is governed by §

5   190.2(d), which provides as follows:

6   > [E]very every person, not the actual killer, who, with reckless

7   > indifference to human life and as a major participant, aids, abets,
    > counsels, commands, induces, solicits, requests, or assists in the

8   > commission of a felony enumerated in paragraph (17) of subdivision
    > (a) which results in the death of some person or persons, and who is

9   > found guilty of murder in the first degree therefor, shall be punished
    > by death or imprisonment in the state prison for life without the

10  > possibility of parole if a special circumstance enumerated in
    > paragraph (17) of subdivision (a) has been found to be true under

11  > Section 190.4.

12  Cal. Penal Code § 190.2(d).

13       B.  *People v. Banks*, 61 Cal.4th 788 (2015)

14       In Banks, the California Supreme Court considered the circumstances under which an

15  accomplice who lacks the intent to kill may qualify as a "major participant" so as to be statutorily

16  eligible for the death penalty or subject to mandatory LWOP.[7]  The defendant in Banks had been

17  the getaway driver for an armed robbery; that was his sole role in the underlying felony.  He was

18  found guilty of felony murder, and the jury also found the felony-murder aider and abettor special

19  circumstance to be true.  The California Supreme Court held that the evidence did not support

20  liability under § 190.2(d), because being the getaway driver was not enough to be a "major

21  participant" in the underlying felony as required by the statute.

22       Banks was a case about statutory construction and sufficiency of the evidence.  On the

23  statutory issue, the court held that the phrase "major participant" in § 190.2(d) has the same

24  meaning that it does in the U.S. Supreme Court's cases about the death-eligibility of felony-

25  murder accomplices, Enmund v. Florida, 458 U.S. 782 (1982) and Tison v. Arizona, 481 U.S. 137

26  (1987).  See Banks, 61 Cal.4th at 798 (noting that text of § 190.2(d) mirrored the holding, and

27  _____

28  [7]  Banks was decided on July 9, 2015, approximately three months after the California Supreme
    Court denied review of petitioner's conviction.

8

was intended to bring state law into conformity with, <u>Tison</u>).  The court announced, "[a]s a matter

of state statute. . . the <u>Tison</u>-<u>Enmund</u> standard is 'applicable to *all* allegations of a felony-murder

special circumstance, regardless of whether the People seek and exact the death penalty of a

sentence of life without parole.'"  <u>Banks</u>, 61 Cal.4th at 805 (citation omitted).  That standard

requires a degree of personal involvement and culpability greater than that required for aider and

abettor liability *simpliciter.*  <u>Id.</u> at 801-802.  The court identified several factors that "may play a

role in determining whether a defendant's culpability is sufficient" to make her eligible for the

death penalty or mandatory LWOP, but emphasized that none of these were necessary or

necessarily sufficient.  <u>Id.</u> at 803.  The ultimate question, to be determined on the totality of the

evidence, is whether the defendant's participation in criminal activities known to carry a grave

risk of death was sufficiently significant to be considered major.  <u>Id.</u>

On the facts before it, the <u>Banks</u> court found insufficient evidence to support a major

participant finding.  The court looked to the facts of <u>Enmund</u> and <u>Tison</u> as creating a "spectrum"

of accomplice participation, and found that Banks was indistinguishable from the getaway driver

in <u>Enmund</u>, who the U.S. Supreme Court was not a "major participant" in the underlying felony

and thus was ineligible for the death penalty.  <u>Id.</u> at 805.

IV.    <u>The State Court's Ruling on Petitioner's Claim</u>

The California Supreme Court denied petitioner's ineffective assistance of appellate

counsel claim in state habeas, without comment or citation.  Lodged Doc. 6.[8]

V.    <u>Objective Reasonableness Under § 2254(d)</u>

Because the state court rejected petitioner's claim of deficient appellate representation by

unexplained "postcard denial," this court's review of that decision proceeds according to <u>Richter</u>,

582 U.S. at 102.  The bottom line is whether denial of the claim was objectively unreasonable in

light of the clearly established federal law.  <u>Id.</u>  Denial of an ineffective assistance of counsel

claim cannot be unreasonable where a petitioner has failed to establish prejudice.  <u>See</u> <u>Strickland</u>,

466 U.S. at 697 (relief may be denied for lack of prejudice without addressing the performance

---

[8] <u>See</u> <u>supra</u>, n. 5.

1   prong of the ineffective assistance analysis).

2       Prejudice in this context turns on the merit of the issue that appellate counsel failed to

3 pursue.  Smith, 528 U.S. at 285-286.  Petitioner's federal claim thus rests entirely on the strength

4 of her incorporated state law argument that she is not eligible for LWOP under Cal. Penal Code §

5 190.2(d) because the evidence does not support a finding that she was a "major participant" as

6 that term was clarified by the California Supreme Court in Banks.[9]  Assuming arguendo that

7 counsel performed deficiently in failing to raise this issue on appeal, the question becomes the

8 likely outcome under California law at the time of petitioner's appeal.[10]  If there is a reasonable

9 likelihood that petitioner would have prevailed and obtained a more favorable sentence, then

10 prejudice is established.  See Smith, 528 U.S. at 285-286.

11       Petitioner cannot demonstrate prejudice here, for a very simple reason: the California

12 Supreme Court has itself considered and rejected her §190.2(d) claim.  Petitioner's state habeas

13 petition squarely presented the claim that the evidence at trial was insufficient to support the

14 special circumstance finding in light of Banks.  See Lodged Doc. 7, Table of Contents.[11]  In state

15 habeas, the ineffective assistance of appellate counsel claim was presented as a subclaim and

16 alternative theory for relief; the primary ground for relief presented to the California Supreme

17 Court was that "petitioner was not a 'major participant' in the murder and must not be subjected

---

[9] Petitioner's briefing repeatedly conflates this issue with the distinct substantive question whether petitioner's LWOP sentence violates the Eighth Amendment under the Enmund-Tison rule.  See, e.g., ECF No. 1-1 at 1.  Petitioner has not presented a free-standing Eighth Amendment claim here.  If she had, relief would be barred by 28 U.S.C. § 2254(d), because the U.S. Supreme Court has never applied this rule to a non-capital sentence.  In the absence of governing U.S. Supreme Court precedent, a habeas petitioner cannot prevail under AEDPA standards.  Wright v. van Patten, 552 U.S. 120, 126 (2008).  Banks obviously does not count as "clearly established federal law" for AEDPA purposes, and moreover was decided not as a matter of Eight Amendment requirements but as a matter of state statutory interpretation.

[10] The undersigned will proceed as if petitioner would have been entitled to the benefit of Banks.  That decision did not overrule any prior precedent of the California Supreme Court that would have required a different result; rather it clarified the meaning of the statute that was in place at the time of petitioner trial.

[11] The copy of the state habeas petition provided by respondent, Lodged Doc. 7, is partial—it jumps from page 19 of the Points and Authorities into exhibits, mid-argument, entirely omitting the sections at pages 19-25 that address the sufficiency of the evidence to support aider and abettor liability under Cal. Penal Code § 190.2(d).  The petition's Table of Contents, however, is sufficient to establish that the issue was presented.

1  to special circumstances liability." Id. (capitalization altered).  That claim was summarily denied

2  on the merits.  Lodged Doc. 6; see Harris, 489 U.S. at 265.  The California Supreme Court has

3  thus determined, as a matter of California law, that there is no merit to the claim that petitioner's

4  conviction for special circumstances felony-murder lacks sufficient evidence in light of Banks or

5  otherwise.  That ruling is binding on this court.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005)

6  (federal habeas court is bound by state court's interpretation of state law).  There is, therefore, no

7  possibility that the claim would have succeeded if appellate counsel had raised it on direct review.

8  Accordingly, petitioner cannot satisfy the prejudice prong of Strickland, and the state court's

9  summary denial of the appellate ineffectiveness claim cannot have been objectively unreasonable.

10       Petitioner briefs the application to her case of the specific factors recognized in Banks as

11  potentially relevant to the major participant inquiry.  This court need not undertake such detailed

12  analysis.  It is enough that petitioner's involvement in the robbery and culpability for the victim's

13  death exceeded the involvement of the Enmund and Banks accomplices.  Petitioner was not

14  merely a getaway driver.  She was the one who got inside the victim's home on false pretenses,

15  by advance design, for the purpose of facilitating a robbery.  She was present when Hammons

16  repeatedly hit Skinner in the head with the Club, and there was testimony that she stood over

17  Skinner afterwards prepared to choke him with speaker wire if necessary to prevent him from

18  getting up.  This is simply not an Enmund or Banks scenario.  Even if the California Supreme

19  Court had not rejected petitioner's Banks claim, the undersigned would readily conclude that such

20  a claim would have likely failed had appellate counsel raised it.

21       Petitioner also contends that appellate counsel should have argued the evidence was

22  insufficient to establish that petitioner exhibited "reckless indifference to human life," a

23  requirement recognized in Banks as independent of the "major participant" requirement and also

24  necessary to a non-capital special circumstances finding under § 190.2(d).[12]  This contention is

25  _____

26  [12]  The jury in this case was instructed pursuant to CALCRIM 703 that the special circumstance
    applicable to petitioner, as a felony-murder accomplice who was not the actual killer, required

27  findings of both major participation and of reckless indifference to human life.  CT 331.  This
    distinguishes petitioner's case from Cody v. Gower, 2016 U.S. Dist. LEXIS 70087, *78-79 (C.D.

28  Cal., Mar. 22, 2016), which petitioner cites in the traverse.  See ECF No. 11 at 4.

1    also defeated by the testimony that petitioner stood over the victim after he had sustained multiple

2    blows to the head with a Club, with speaker wire wrapped around her hand, and approached as if

3    prepared to choke him when he stirred.  2 RT 423-424.  Although petitioner did not actually use

4    the speaker wire as a garotte, this evidence reasonably supports an inference of willingness to use

5    force against a person who was already grievously injured, which would establish reckless

6    indifference to human life.  In light of this evidence, there is no reasonable likelihood that a

7    challenge to the evidence of reckless indifference would have succeeded on appeal.

8         Because petitioner cannot establish prejudice from the alleged errors of appellate counsel,

9    the state court cannot have unreasonably applied Strickland.  Federal habeas relief accordingly is

10   unavailable.

11                                      CONCLUSION

12        For all the reasons explained above, the state court's denial of petitioner's claim was not

13   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Relief is therefore

14   statutorily barred.  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of

15   habeas corpus be denied.

16        These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

21   he shall also address whether a certificate of appealability should issue and, if so, why and as to

22   which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

23   within fourteen days after service of the objections.  The parties are advised that failure to file

24   objections within the specified time may waive the right to appeal the District Court's order.

25   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26   DATED: July 8, 2020

27                                      ALLISON CLAIRE
                                        UNITED STATES MAGISTRATE JUDGE

28